UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-81174-Cannon/McCabe

FERNAN LUGONES,

    Plaintiff,

v.

RANGER CONSTRUCTION
INDUSTRIES, INC.,

    Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") (DE 16), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 18). By previous order, the District Court dismissed an earlier version of the complaint in this case, but allowed Plaintiff leave to file an amended complaint to attempt to cure the pleading deficiencies (DE 12, DE 14). This Second Amended Complaint ("SAC") followed, alleging five counts (DE 15). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED**, that Counts 1, 2, 3, and 4 be **DISMISSED WITH PREJUDICE**, and that Count 5 be **DISMISSED WITHOUT PREJUDICE** with leave to re-file Count 5 in state court.

I.    **BACKGROUND**

This is a disability discrimination case alleging claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601, et seq.; and the Florida workers' compensation retaliation statute, Fla. Stat. § 440.205. The Court accepts the following facts as true, taken from the SAC.

On July 25, 2022, Plaintiff, a truck driver, tripped on the jobsite and injured his toenail (DE 15 ¶ 6). The injury pulled the toenail from the root of the nail bed, causing the toenail to impale itself within the flesh of the toe (DE 15 ¶ 6). Plaintiff reported the problem to his supervisor, who instructed him to go to the hospital (DE 15 ¶¶ 7, 9). At the hospital, an emergency room doctor performed a medical surgical procedure to cut the toenail out of the toe, leaving an open wound (DE 15 ¶ 11).

Following the procedure, the doctor determined that Plaintiff would not be able to use his foot until his toe healed and that Plaintiff would be limited in the ability to walk, stand, or work (DE 15 ¶ 12). The doctor instructed Plaintiff not to return to work until July 28, 2022 and gave Plaintiff a note to this effect (DE 15 ¶¶ 12, 14). The doctor also instructed Plaintiff to treat the toe with pain medication during the healing process (DE 15 ¶ 13).

The next day, on July 26, 2022, Plaintiff informed Defendant of the injury and his inability to return to work until July 28, 2022 (DE 15 ¶ 16). In response, Defendant advised Plaintiff that he had abandoned his job, effectively terminating him (DE 15 ¶¶ 17-19). By way of the SAC, Plaintiff alleges his toenail injury/condition constituted a "disability" within the meaning of the ADA (DE 15 ¶¶ 24-25, 35-36), that he was entitled to protections under the FMLA (DE 15 ¶¶ 45-48, 51-54), and that he was entitled to protections under Florida's workers' compensation law (DE 15 ¶¶ 63-68). He alleges the following five counts:

| Count 1 | Wrongful Termination under the ADA |
| Count 2 | Failure to Accommodate under the ADA |
| Count 3 | Interference under the FMLA |

       Count 4        Retaliation under the FMLA

       Count 5        Retaliatory Discharge under Fla. Stat. § 440.205

(DE 15).

## II.    DISCUSSION

By way of this Motion, Defendant seeks dismissal of all five counts pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Defendant argues that all five counts of the SAC fail to state plausible claims for relief under this standard. The Court will address the ADA claims (Counts 1 and 2), followed by the FMLA claims (Counts 3 and 4), followed by the workers' compensation claim (Count 5).

### A.    The ADA Claims (Counts 1 and 2)

Counts 1 and 2 alleged disability discrimination claims under the ADA for, respectively, wrongful termination and failure to accommodate (DE 15 ¶¶ 24-25, 35-36). The District Court dismissed a previous version of these claims for failure to allege facts sufficient to show a "disability" within the meaning of the ADA (DE 12, DE 14). Defendant argues the SAC continues

to suffer from the same defect and should be dismissed.  *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007) (noting that plaintiff must show a "disability" as one of the mandatory threshold elements of an ADA discrimination claim).  As set forth below, the Court agrees.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).  Under the statute, "[m]ajor life activities include but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

In September 2008, Congress broadened the scope of "disability" by enacting the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553 ("ADAAA").  By way of the ADAAA, Congress directed that the definition of "disability" be "construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A).  Congress likewise directed that the term "substantially limits" be interpreted consistent with the liberalized purposes of the ADAAA. 42 U.S.C. § 12102(4)(B).

Congress also directed the EEOC to revise its regulations to make them consistent with the new law.  Pub.L. No. 110–325, § 2(b)(6).  After a period of notice and comment, the EEOC complied with this directive and revised its regulations.  *See* Regulations to Implement the Equal Employment Provisions of the Americans With Disabilities Act, as Amended, 76 Fed. Reg. 16,978 (Mar. 25, 2011).  Though not binding, courts may look to EEOC regulations for guidance in

interpreting relevant provisions of the ADA. *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 n.4 (11th Cir. 2004).

The revised regulations provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and that the term is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). As to the temporal duration of a given impairment, the revised regulations provide that the "effects of an impairment *lasting or expected to last fewer than six months* can be substantially limiting" for purposes of proving an actual disability. 29 C.F.R. § 1630.2(j)(1)(ix) (emphasis added). The EEOC also published an Appendix to Part 1630, offering further guidance on the issue of impairment duration:

> Therefore, an impairment does not have to last for more than six months in order to be considered substantially limiting under the first or the second prong of the definition of disability. For example … if an individual has a back impairment that results in a 20–pound lifting restriction *that lasts for several months*, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability. At the same time, "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. *Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe.*"

29 C.F.R. § Pt. 1630, App. (quoting Joint Hoyer–Sensenbrenner Statement on the Origins of the ADA Restoration Act of 2008, H.R. 3195 at 5) (emphasis added).

Under pre-ADAAA law, courts generally found that impairments of temporary duration did not qualify as "disabilities." *See, e.g.*, *Samuels v. Kansas City Missouri Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006) (noting that "temporary impairments with little or no long-term impact are not disabilities"). In the wake of the ADAAA, however, courts have recognized that *some* temporary impairments can meet the standard. *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 333 (4th Cir. 2014) (reversing the dismissal of an ADA claim where plaintiff alleged a temporary knee injury that prevented him from walking "for at least seven months"); *Dykstra v. Florida*

5

*Foreclosure Attorneys, PLLC*, 183 F.Supp.3d 1222, 1230 (S.D. Fla. 2016) (denying motion to dismiss where plaintiff alleged a temporary back injury that caused him to "take a significant amount of time off work").

In this case, the SAC alleges the existence of a "disability" based on the same essential facts alleged in the previous complaint, namely that Plaintiff suffered a toenail injury that caused him to miss less than three days of work (DE 6 ¶¶ 6-13).[1] The Court finds these facts do not rise to the level of a "disability" within the meaning of the ADA. Plaintiff fails to cite any cases that recognize a "disability" based on a physical condition of such limited duration and severity.

The relevant case law seems to indicate the opposite. In *Martinez v. New York State Div. of Hum. Rts.*, No. 1:13-CV-1252-GHW, 2015 WL 437399, at *7 (S.D.N.Y. Feb. 2, 2015), for example, the court found no disability for purposes of the Rehabilitation Act (which employs the same definition of "disability" as the ADA) based on a plaintiff's lower back, right hip, and right leg injuries suffered during a slip and fall, which injuries prevented the plaintiff from working for two months. The *Martinez* court reasoned:

> While, as plaintiff correctly points out, the ADA Amendments Act of 2008 (the "ADAA") broadened the definition of a disability under the law, not all impairments are sufficiently substantial to be considered disabilities under the ADA-or, by extension, the Rehabilitation Act. The EEOC regulations make that point clear. 29 C.F.R. § 1630.2(j)(1)(ii). As one treatise explains:
>
> [T]he person must have an impairment that must substantially limit his or her major life activities such as seeing, hearing, speaking, walking, breathing, performing manual tasks, learning, caring for oneself, and working.
>
> Thus, an individual with epilepsy, paralysis, HIV infection, AIDS, a substantial hearing or visual impairment, mental retardation, or a specific learning disability is

---

[1] Plaintiff alleges he suffered the injury on July 25, 2022, but he does not specify the time of day of the injury (DE 15 at ¶ 6). He further alleges that the emergency room doctor authorized him to return to work on July 28, 2022 (DE 15 at ¶ 12). Hence, Plaintiff's injury caused him to miss work for a period of time between two and three days.

> covered, but an individual with a minor, non-chronic condition of short duration, such as a sprain, broken limb, or the flu, generally would not be covered.
>
> For example, an employee suffers a broken wrist that is expected to heal, but while it is healing he is unable to perform the essential functions of his job as an assembly-line worker. This employee is not protected by the ADA because, although he is "impaired," the impairment does not substantially limit a major life activity because it is of limited duration and will have no long-term effect.
>
> Margaret C. Jasper, Legal Almanac: The Americans With Disabilities Act § 2.5 (2012).
>
> …
>
> The injuries resulting from the plaintiff's slip and fall did not render her disabled within the meaning of the Rehabilitation Act. The plaintiff's experience is not substantively different from the worker in the example above who broke a bone, but recovered fully. The plaintiff was injured, and was unable to work for a short period. However, the record does not substantiate her claim that she was disabled within the meaning of the Rehabilitation Act.

*Id.*

Other courts agree that physical conditions of such limited duration and severity do not rise to the level of a "disability." *See Vargas v. St. Luke's-Roosevelt Hospital Center*, No. 16-CV-5733, 2020 WL 2836824, at *7 (S.D.N.Y. June 1, 2020) (finding no ADA disability at the summary judgment stage where plaintiff could return to work within "a week of his surgery and [was] capable of full physical activity after just two months"); *Dudley v. N.Y.C. Hous. Auth.*, No. 12-CV-2771, 2014 WL 5003799, at *34 (S.D.N.Y. Sept. 30, 2014) (finding no ADA disability at the summary judgment stage where plaintiff's "claims relate[d] only to a temporary injury while he was recovering after surgery for a torn meniscus"); *Brodzik v. Contractors Steel, Inc.*, 48 F. Supp. 3d 1183, 1189 (N.D. Ind. 2014) (dismissing ADA complaint where plaintiff alleged

disability based on a six-week recovery leave for hernia surgery); *Butler v. BTC Foods, Inc.*, No. 12-492, 2012 WL 5315034, at *2 (E.D. Pa. Oct. 19, 2012) (same).

The Court has considered the cases cited by Plaintiff but finds them distinguishable because they involved plaintiffs with physical conditions of greater duration and severity than Plaintiff. In *Kerrigan v. Bd. of Educ. of Carroll County.*, No. WDQ-14-3153, 2015 WL 4591053, at *4 (D. Md. July 28, 2015), for example, an ADA complaint survived dismissal where the plaintiff had been "unable to work for about six weeks." In *Gonzalez v. Spitzer Autoworld Homestead, Inc.*, 672 F. Supp. 3d 1252, 1284 (S.D. Fla. May 8, 2023), an ADA complaint survived dismissal where the plaintiff's ankle injury lasted for about two weeks and required that she "use an Unna boot, a posterior splint, and crutches." Likewise, in *Moore v. Jackson Cnty. Bd. of Educ.*, 979 F. Supp. 2d 1251, 1259 (N.D. Ala. 2013), an ADA complaint survived dismissal where the plaintiff's period of recovery following an ankle injury lasted for at least four months and required her to undergo surgery and use "crutches, a wheelchair, a walker, and a cane in order to be mobile."

The Court finds the facts alleged here to be different. Despite Plaintiff's revised allegations, the Court again finds, as a matter of law, that a toenail injury causing less than a three-day absence from work does not qualify as a "disability" within the meaning of the ADA. As such, the Court finds the SAC fails to state a plausible claim for relief under Counts 1 and 2. Given that Plaintiff had a prior opportunity to state a claim based on the nature of his physical condition, the Court recommends that Counts 1 and 2 be **DISMISSED WITH PREJUDICE**.

    **B.**    **The FMLA Claims (Counts 3 and 4)**

Counts 3 and 4 allege discrimination under the FMLA, which entitles employees to take leave for certain family and medical reasons. *See* 29 U.S.C. §§ 2601, 2612. Among other reasons, an eligible employee may take up to twelve weeks of leave because of a "serious health condition"

that renders the employee unable to perform the functions of his or her position.  29 U.S.C. § 2612(a)(1)(D).  Counts 3 and 4 allege, respectively, claims of FMLA interference and retaliation (DE 15 ¶¶ 45-48, 51-54).  To state a claim for interference, a plaintiff must allege facts that show he or she was entitled to a benefit under the FMLA and was denied that benefit.  *Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir. 2001).  To state a claim for retaliation, a plaintiff must allege facts that show "(1) he [or she] engaged in a statutorily protected activity; (2) he [or she] suffered an adverse employment decision; and (3) that the decision was causally related to the protected activity."  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015).

Defendant urges dismissal of these counts on multiple grounds, but the Court need only address one, namely that the SAC fails to allege facts sufficient to show a "serious health condition" within the meaning of the FMLA.  Under the FMLA, a "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. §2611(11).  Although the FMLA does not define "continuing treatment by a health care provider," the Department of Labor ("DOL") has promulgated regulations to define the term, which the Eleventh Circuit has utilized in evaluating FMLA claims.  *See, e.g.*, *Russell v. North Broward Hosp.*, 346 F.3d 1335, 1343-44 (11th Cir. 2003) (utilizing DOL regulations to analyze claims under the FMLA).

The DOL regulation defines the term "continuing treatment by a health care provider" to require, among other things, "[a] period of incapacity of more than three consecutive, full calendar days[.]"  29 C.F.R. § 825.115(a).  The Eleventh Circuit has held that the term "more than three consecutive calendar days" means a period of incapacity of 72 consecutive hours or more.  *Russell*,

9

346 F.3d at 1344–45. The term "incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

Applying these definitions, courts have repeatedly rejected FMLA claims based on periods of incapacity of less than three days. *See Tippins v. Honda Mfg. of Alabama, LLC*, 523 F. App'x 641, 642-43 (11th Cir. 2013) (affirming summary judgment in FMLA case where undisputed facts showed plaintiff's dental condition did not cause more than three consecutive days of incapacity); *Weiler v. Draper Chevrolet Co.*, No. 12-12402, 2012 WL 3758732, at *3 (E.D. Mich. Aug. 29, 2012) (noting that "two days of doctor's excuses are not sufficient to state a claim under the FMLA's implementing regulations") (cleaned up); *Banks v. McGlynn, Hays & Co.*, No. 21-CV-679 (JPO), 2022 WL 845752, at *2 (S.D.N.Y. Mar. 22, 2022) (dismissing FMLA claim where plaintiff's doctor's notes did not show more than three consecutive days of incapacity); *Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 17-18 (D. Conn. 2018) (dismissing FMLA claim where plaintiff alleged her physician instructed her to remain out of work for two days).

Applying the appropriate standard here, the Court finds the SAC fails to allege facts that, even when construed in the light most favorable to Plaintiff, demonstrate a "serious health condition" within the meaning of the FMLA. To begin, Plaintiff did not receive "inpatient care" of any kind as required by 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114. Rather, he visited the emergency room on July 25, 2022 and received treatment on that day, leaving with instructions not to return to work until July 28, 2022 (DE 15 ¶¶ 12-13, 16). Likewise, Plaintiff did not allege facts showing a "period of incapacity of more than three consecutive, full calendar days" as required by 29 C.F.R. § 825.115(a). Rather, as set forth in the SAC, he suffered a period of incapacity of less than three days (DE 15 ¶¶ 6, 12, 16).

The Court therefore finds that the SAC fails to allege sufficient facts to demonstrate plausible FMLA interference and retaliation claims. As such, Counts 3 and 4 should be **DISMISSED**. Given that Plaintiff had a prior opportunity to allege the nature and circumstances of his physical condition and injuries, the Court recommends this dismissal be **WITH PREJUDICE**.[2]

### C.     Florida Workers' Compensation Claim (Count 5)

Count 5 alleges a claim under Fla. Stat. § 440.205, which creates a retaliation cause of action against employers who fires an employee because the employee sought workers' compensation benefits under Florida law (DE 15 ¶¶ 63-68). Defendant urges dismissal of Count 5 on multiple grounds, including the SAC's failure to allege that Plaintiff filed a workers' compensation claim or that Plaintiff ever placed Defendant on notice of his intent to file such a claim (DE 16 at 9).

Given the recommendations set forth above in sections II.A and II.B, the Court declines to analyze the viability of Plaintiff's workers' compensation retaliation claim under Fla. Stat. § 440.205. Count 5 represents the sole Florida state-law claim alleged in the SAC. As such, this Court's jurisdiction over Count 5 rests solely on the supplemental jurisdiction provisions of 28

---

[2] Defendant raises two additional arguments which the Court finds meritorious but only deserving of a dismissal *without* prejudice. Specifically, Defendant argues (1) that the SAC fails to allege facts sufficient to show Plaintiff qualified as a "covered employee" since the SAC fails to allege that Plaintiff worked at least 1,250 hours during the previous twelve-months, *see Surtain*, 789 F.3d at 1247, and (2) that the SAC fails to allege facts sufficient to show Defendant qualified as a "covered employer" since the SAC fails to allege Defendant engaged in interstate commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, *see* 29 U.S.C. § 2611(4)(A). Although the Court finds merit in these arguments, the Court also recognizes that Plaintiff might reasonably be able to cure these pleading defects. As such, to the extent the District Court rejects the undersigned's recommendation regarding "serious health condition" and reaches these alternative arguments, the undersigned recommends a dismissal without prejudice of Counts 3 and 4.

U.S.C. § 1367. As the Eleventh Circuit has observed, "[w]hen all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). The Court therefore recommends that Count 5 be **DISMISSED WITHOUT PREJUDICE** so that Plaintiff can re-file the claim in state court if he so chooses.

### III. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 16) be **GRANTED,** that Counts 1, 2, 3, and 4 be **DISMISSED WITH PREJUDICE**, and that Count 5 be **DISMISSED WITHOUT PREJUDICE**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 22nd day of March 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE